UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 20-69-WOB-CJS

UNITED STATES OF AMERICA                                            PLAINTIFF

v.                          **REPORT AND RECOMMENDATION**

$27,407.00 IN UNITED STATES CURRENCY                         DEFENDANT

\* \* \* \* \* \* \* \* \* \*

This matter is before the Court for a Report and Recommendation regarding Plaintiff United States' Motion to Strike Claim (R. 18) pursuant to Federal Rule of Civil Procedure 37(b)(2) for failure to obey this Court's Order (R. 16) and respond to written discovery requests. For the reasons set forth below, it will be recommended that the Government's Motion to Strike Claim (R. 18) be granted and the claim of Paul Dunn (R. 7) be stricken from the record.

**I.**        **BACKGROUND AND PROCEDURAL HISTORY**

On December 17, 2019, Drug Enforcement Agency ("DEA") agents received information about Paul Dunn, who was traveling from Cincinnati to Los Angeles, California on a "suspicious flight itinerary." (R. 1-2, Page ID 6). Dunn purchased his one-way ticket to Los Angeles only two days before the scheduled travel. (*Id.*). Dunn also had a criminal history of drug-related charges, including trafficking cocaine and marijuana. (*Id.*). On the day of Dunn's departure, DEA agents approached Dunn at the entrance to the jetway. (*Id.*). According to Task Force Officer ("TFO") Joseph Luebbers, Dunn agreed to speak with the agents. (*Id.*). When TFO Luebbers asked for permission to search Dunn's carry-on bag to confirm that he had no "large sums of U.S. currency, narcotics, and/or any kind of contraband to include weapons," Dunn refused. (*Id.*, Page ID 7).

1

After Dunn refused consent to search of his carry-on bag, TFO Luebbers advised him he could board the airplane but leave his carry-on bag on the floor in the jetway for a drug detection K-9 to sniff. (*Id.*). Dunn replied, "[n]o, I'm not doing anything with my bag," and proceeded to pull his arm behind him like he was going to throw a punch. (*Id.*). TFO Richard Bernecker stepped forward, pushed Dunn back, and grabbed Dunn's carry-on bag out of his hand. (*Id.*). TFO Bernecker then placed the carry-on bag on the floor for the K-9 to sniff. (*Id.*). Dunn became furious and screamed at the agents. (*Id.*). TFO Luebbers told Dunn he could board the aircraft and his carry-on bag would be returned to him, but Dunn stated that he was not going anywhere and proceeded to yell louder. (*Id.*). TFO Bernecker asked what Dunn had in his carry-on bag, to which Dunn replied, "I have twenty-three thousand dollars." (*Id.*, Page ID 8).

Dunn continued to make a scene in the jetway until the K-9 arrived. (*Id.*). The K-9 gave a positive indication to Dunn's bag. (*Id.*). TFO Luebbers then advised Dunn that the agents would be holding the carry-on bag for a search warrant because of the positive indication. (*Id.*). Dunn then verbally consented to a search of the bag before he boarded the aircraft. (*Id.*). Task Force Officers conducted an inventory of Dunn's bag, finding two iPhones, a wallet, a laptop, and two shrink-wrapped bricks of U.S. currency. (*Id.*). Special Agent Cameron Rice asked Dunn who the money belonged to, and Dunn replied that it was money he had made from buying and selling auction vehicles. (*Id.*). Dunn, however, had no receipts, invoices, or any other proof of sale or valid income. (*Id.*). Dunn only had an auction license which had been expired for at least six months. (*Id.*, Page ID 9).

TFO Luebbers then advised Dunn that the bag was going to be seized, agents concluding they had probable cause to seize. (*Id.*). That probable cause conclusion that the $27,407 seized from Dunn was proceeds from or intended for drug-related activities included: (1) Dunn's travel

2

on a recently purchased, one-way airline ticket; (2) his travel to a known source city with a large amount of cash; (3) his extensive drug-related criminal history; (4) his nervous and disruptive behavior during his encounter with law enforcement; (5) his lack of evidence of a legitimate source of income; and (6) the positive indication for narcotics by the K-9. (*Id.*).

On May 7, 2020, the United States filed a Verified Complaint for Forfeiture In Rem of the $27,407 in U.S. currency seized from Dunn. (R. 1). On June 4, 2020, Dunn filed a Verified Claim demanding the return of the $27,407 (R. 7) and on June 22 filed his Answer (R. 8). The case was set for a telephonic scheduling conference; however, Dunn failed to participate in that conference. (*See* R. 14). After that conference, a scheduling order was entered requiring discovery be completed by November 16, 2020. (*Id.*). The Government served Dunn with written discovery requests via email on July 23, 2020, and via U.S. mail on August 27, 2020. (R. 15, Page ID 59). When no response to the discovery requests was received within thirty days, the Government sent Dunn a letter via U.S. mail and email on October 1, 2020, informing Dunn that his responses were overdue. (*Id.*). The Government then filed a Motion to Compel Dunn to respond to its written discovery requests. (*Id.*, Page ID 57). On December 15, 2020, the Court granted the Government's motion to compel and ordered Dunn to answer the Government's discovery requests within seven days. (R. 16). On December 23, 2020, per the Court's December 15, 2020 Order, the Government filed a Notice informing no responses to its written discovery requests had been received from Dunn as required by the December 15, 2020 Order. (R. 17). The Government thereafter filed the pending Motion to Strike Dunn's claim. (R. 18).

Dunn has made no filings in this case other than his Verified Claim (R. 7) and Answer (R. 8). He did not file a response to either the Government's Motion to Compel or its Motion to Strike Claim.

## II. ANALYSIS

The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, specifically Rule G, govern a forfeiture action in rem arising from a federal statute. *See* Supp. R. G(1). The United States filed its Verified Complaint (R. 1) in accordance with 18 U.S.C. § 983. Rule G(5)(a) provides that a person contesting the forfeiture of property in a civil forfeiture action may oppose the forfeiture by filing a claim in the court where the action is pending, by identifying the specific property claimed, identifying the claimant, and stating the claimant's interest in the property. Supp. R. G(5)(a)(i)(A)(B). In addition to filing a claim, Rule G(5)(b) requires a claimant to file an answer to the complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure within 21 days after filing the claim. Here, Dunn filed an Answer (R. 8) to the Complaint within 21 days after filing his Verified Claim (R. 7).

To the extent Rule G does not address an issue in a forfeiture action in rem, the Federal Rules of Civil Procedure also apply. Supp. R. G(1). Because rules regarding discovery and discovery-related sanctions under the Federal Rules of Civil Procedure are consistent with Rule G, they govern in forfeiture in rem cases. *See United States v. $50,800.00 in U.S. Currency*, No. CV-10-2004-PHX-LOA, 2011 WL 2434225 (D. Ariz. June 16, 2011); *see also United States v. Approximately $30,000.00 in U.S. Currency*, No. 1:13-CV-1542-GSA, 2015 WL 5097707, at *7 (E.D. Cal. Aug. 28, 2015) (court applied Rule 37 sanctions to claimant in forfeiture in rem action).

Rule 37(b) of the Federal Rules of Civil Procedure allows a district court to impose sanctions on a party who fails to comply with a discovery order. Fed. R. Civ. P. 37(b). "[S]triking the pleadings in whole or in part," is one of the sanctions allowed by Rule 37. Fed. R. Civ. P. 37(b)(2)(A)(iii). Here, the Government moves to strike Dunn's claim pursuant to Rule 37(b)(2) for his failure obey this Court's Order (R. 16) compelling discovery. To comply with the Court's

4

Order, Dunn was required to respond to the Government's interrogatories by December 22, 2020. (*See* R. 16). No responses were provided by the December 22 deadline nor were late responses provided after that date.

When considering a sanction of dismissal, courts examine several factors. While the circuits have adopted various versions of the factors looked to in determining whether to strike a claim as a sanction for discovery violations, the Sixth Circuit considers four factors: "'(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic sanctions were imposed or considered before dismissal was ordered.'" *ECIMOS, LLC v. Nortek Glob. HVAC, LLC*, 736 F. App'x 577, 582 (6th Cir. 2018) (quoting *Universal Health Grp. v. Allstate Ins. Co.*, 703 F.3d 953, 956 (6th Cir. 2013)).

As to the first factor, "if noncompliance with discovery orders is due to willful or bad faith disregard for those orders[,]" the drastic sanction of striking a party's claim may be imposed. *United States v. $100,100.00 in U.S. Funds*, No. 4:07-CV-180, 2008 WL 4614329, at *1 (M.D. Ga. Oct. 16, 2008); *see also United States v. Approximately $141,932.00 in U.S. Currency*, No. 1:04-CV-6743-LJO-TAG, 2008 WL 190878, at *4 (E.D. Cal. Jan. 18, 2008), *report & recommendation adopted*, No. 1:04-CV-6743-LJO-TAG, 2008 WL 345864 (E.D. Cal. Feb. 4, 2008) ("striking a party's pleadings as a discovery sanction is warranted where the party has demonstrated a blatant disregard of the court's orders and the discovery rules"). To demonstrate willful disregard on the part of a claimant, a party need only show the disobedient conduct was within the control of the claimant. *United States v. $30,000.00 in U.S. Currency*, 2015 WL 5097707, at *8 (E.D. Calif. Aug. 28, 2015). However, many courts have not found willful

noncompliance on the part of a claimant in the absence of either a government motion or court order compelling discovery. *See United States v. Certain Real Prop. Located at Route 1, Bryant, Ala.*, 126 F.3d 1314, 1318 (11th Cir. 1997); *see also Buchanan v. Bowman*, 820 F.2d 359, 361 (11th Cir. 1987) (a Rule 37 dismissal sanction, although extreme, is appropriate 'where the party's conduct amounts to flagrant disregard and willful disobedience of discovery orders'). The district court in *United States v. $100,100.00 in U.S. Funds*, for example, denied the government's motion to strike the claimant's claims because it had not filed a motion to compel discovery in the case. No. 4:07-CV-180 (CDL), 2008 WL 4614329, at *1 (M.D. Ga. Oct. 16, 2008).

As to the second factor, prejudice to the adversary, courts examining this factor have easily found that the United States suffers prejudice when claimants fail to respond to its requested discovery because it hinders the United States' ability to prosecute claims. *See United States v. $1,322,242.58,* 938 F.2d 433, 440 (3d Cir. 1991); *United States v. $61,980.00 in U.S. Currency,* 2004 WL 3048843, at *2 (D. Kan. Dec. 30, 2004). In *United States v. $49,888.00 in U.S. Currency,* for example, the court found that the claimant's failure to answer interrogatories pursuant to a court order prejudiced the United States by inhibiting its ability to prepare for trial and that the claimant's refusal was part of a strategy to litigate the dispute. *United States v. $49,888.00 in U.S. Currency,* No. 06-1232-KMH, 2007 WL 1795349, at *1 (D. Kan. June 19, 2007).

Factors three and four focus on whether the dismissed party was warned and whether less drastic sanctions were first imposed or considered. The court in *United States v. $49,888.00 in U.S. Currency* also found these factors were satisfied, noting that lesser sanctions would not bring about compliance with the court's order as the claimant had delayed her response to multiple requests from plaintiff's counsel, a motion to compel, and a court order for over six months and that claimant was warned that failure to comply with the court order could result in striking her

6

claim. *Id.* And in *United States v. Approximately $30,000.00 in U.S. Currency,* the court concluded that lesser sanctions were not appropriate in circumstances where claimant failed to obey court discovery orders or prosecute his claim, appearing to have abandoned his claim, and was warned his failure could result in default. 2015 WL 5097707, at *9.

Here, Dunn failed to participate in the July 16, 2020 telephonic scheduling conference. He then failed to respond to the Government's written discovery requests. Unlike in *United States v. $100,100.00 in U.S. Funds,* in this case the United States filed a Motion to Compel Dunn to respond to its discovery. Dunn did not file a response to that Motion. The Court granted the Government's request, ordering Dunn to provide discovery responses by a date certain. Dunn did not do so. Dunn's disregard of this Order is sufficient to establish willful failure and bad faith. The failure to provide discovery responses in disobedience of the Court's Order was within Dunn's control. Next, Dunn's failure to comply has prejudiced the United States. Without the requested discovery, the Government is unable to prosecute the case and litigate the merits of Dunn's claim; Dunn's lack of attention to these proceedings has delayed the expedient disposition of this matter. Moreover, the Court previously warned Dunn that failure to timely comply with the December 15, 2020 Order compelling discovery may result in his claim being "disposed of finally and with prejudice." (R. 16, Page ID 87). Finally, lesser sanctions would not be appropriate here given that Dunn has essentially abandoned his claim.

### III.   CONCLUSION AND RECOMMENDATION

Accordingly, for the reasons set forth above,

**IT IS RECOMMENDED** that

1)   Plaintiff United States' Motion to Strike Claim (R. 18) **be granted;** and

2)   Claimant Paul Dunn's Verified Claim (R. 7) **be stricken** from the record.

The Clerk is directed to mail a copy of this Report and Recommendation to Claimant at the address listed on the Court's docket.

Specific objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd*, 474 U.S. 140, 155 (1985). A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection. *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *Howard*, 932 F.2d at 509. A party may respond to another party's objections within fourteen (14) days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 26th day of April, 2021.



Signed By:
*Candace J. Smith*
United States Magistrate Judge

J:\DATA\Orders\civil cov\2020\20-69-WOB R&R re MTStrike.docx